UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN E. JACKSON | CIVIL ACTION |
| VERSUS | NO. 07-1317 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION "N" (2) |

## **FINDINGS AND RECOMMENDATION**

Plaintiff, John E. Jackson, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

As ordered, plaintiff filed a timely memorandum of facts and law. Record Doc. No. 18. Defendant filed a timely reply memorandum. Record Doc. No. 22.

I.  PROCEDURAL HISTORY

Jackson filed applications for DIB and SSI on March 1, 2005, alleging disability since October 15, 2004 based on attention deficit hyperactivity disorder, bipolar disorder,

learning disability and depression. (Tr. 77-79, 206-11). After his application was denied in July 2005, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 8, 2006. (Tr. 243-86). On August 22, 2006, the ALJ denied plaintiff's application. (Tr. 31-37). After the Appeals Council denied review on January 16, 2007, the ALJ's decision became the final decision of the Commissioner for the purposes of this court's review. (Tr. 3-5).

II.     STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.  The ALJ erred by failing to find plaintiff disabled under Listing 12.05 for mental retardation.

B.  The ALJ's findings concerning plaintiff's residual functional capacity are not based on substantial evidence.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.  Jackson has severe impairments consisting of mixed personality disorder with borderline and antisocial features and major depression.

2.  He does not have an impairment or combination of impairments that meets or equals in severity the criteria of any section of the Listings of Impairments.

3.  Plaintiff has only mild limitations in activities of daily living; moderate limitations with social functioning and maintaining concentration, persistence or pace; and one or two past episodes of decompensation.

    4.      He has moderate limitations in his ability to understand, remember, and carry out detailed instructions; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and complete a normal work day and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

    5.      Jackson has no past relevant work.

    6.      Considering plaintiff's age, education, work experience and residual functional capacity, he could perform jobs that exist in significant numbers in the national economy, such as janitor or custodian.

(Tr. 33-36).

## IV. ANALYSIS

### A. Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360. This court may not "reweigh the

evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations

---

[1] The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

4

that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2006). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2] The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Newton, 209 F.3d at 453. If he successfully carries this burden, the burden shifts to the

---

[2]The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (2004) ("Medical-Vocational Guidelines").

Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174.

B.     Factual Background

Plaintiff testified that he is not working and that he has tried unsuccessfully to work since the last time his claim for DIB was denied. He stated that he tries to ask questions if he does not understand what he is doing and tries to do his best when he is working. He said he earns some money doing clean up work for his uncle, who is a contractor.

Jackson stated that he sees a doctor named Mr. Charlie at Rosenblum Mental Health Clinic. He testified that he has not been getting any medication lately because his Medicaid was cut off and his doctor has been charging him for his medications. He said his money situation is rough and that he does not have time to get his medications. (Tr. 215-16).

Plaintiff testified that he takes thorazine, which makes him woozy but it stops him from hearing things. He said he takes all his medications at one certain time. He stated that he lives with his mother as he always has. He said he does not have a driver's license and that his mother or someone else will take him places. (Tr. 216).

Jackson stated that he currently spends time reading on the computer and that his cousin is helping him make music. (Tr. 217).

Plaintiff testified that he had worked at Popeye's, at another fried chicken restaurant and at Jack in the Box, but that he lost each job because the employers said that he moved too slowly. He said he has not been able to keep any job, except clean up work. (Tr. 219).

    C.    <u>Vocational Expert Testimony</u>

A vocational expert, Thomas Meunier, Jr., testified at the hearing. The ALJ proposed a hypothetical of a younger individual with a marginal education and an unlimited exertional capacity, but who has a moderately reduced ability to understand, remember, and carry out detailed instructions; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers without distracting them or exhibiting behavioral extremes; and complete a normal work day and work week without interruptions. The ALJ defined "moderate" as "limited but still able to function satisfactorily."

Meunier testified that such a person could work as an unskilled janitor or building cleaner. He said that there are approximately 1,500,000 of these types of jobs in the national economy across light, medium and heavy exertional categories. (Tr. 218).

Upon cross-examination by plaintiff's attorney, Meunier stated that an inability to work a 40-hour week because of an inability to sustain a persistent and normal pace would eliminate full-time competitive employment. (Tr. 218-19).

D.   Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 33-35). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections, and highlights noted below.

E.   Plaintiff's Appeal

1.   Substantial evidence supports a conclusion that plaintiff's impairments do not meet Listing 12.05.

Jackson argues that the ALJ should have found him disabled by mental retardation under Listing 12.05(B) or 12.05(C). Plaintiff has the burden of proof at this third step of the sequential evaluation. Newton, 209 F.3d at 453.

> For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. See Social Security Ruling (SSR) 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983) ("An impairment 'meets' a listed condition . . . only when it

>manifests the specific findings described in the set of medical criteria for that listed impairment." "The level of severity in any particular listing section is depicted by the given set of findings and not by the degree of severity of any single medical finding–no matter to what extent that finding may exceed the listed value").

Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990) (footnotes and citations omitted); accord Bullock v. Astrue, No. 07-30344, 2007 WL 4180549, at *4 (5th Cir. Nov. 27, 2007); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990).

Jackson argues that the ALJ erred by failing to address Listing 12.05 specifically. The Fifth Circuit recently vacated and remanded a case in which the plaintiff had claimed that she met a particular Listing, but the ALJ had "summarily" stated at the third step that the plaintiff's severe impairments failed to meet or equal the requirements of any Listing. Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007). The Fifth Circuit noted that the ALJ had neither identified the listed impairment that she considered nor explained how she had reached the conclusion that the plaintiff's symptoms were insufficiently severe to meet any listed impairment.

>Although the ALJ is not always required to do an exhaustive point-by-point discussion, in this case, the ALJ offered nothing to support her conclusion at this step and because she did not, we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not.

Id. (quotation and citation omitted).

Having found that the ALJ erred in Audler, the Fifth Circuit stated that "we must still determine whether this error was harmless. Procedural perfection in administrative

proceedings is not required as long as the substantial rights of a party have not been affected." Id. (quotation and citations omitted).

The plaintiff, Audler, had submitted medical evidence showing that she "had most of the symptoms" of the Listing. Id. at 449. The Fifth Circuit held that the ALJ's error was not harmless.

> <u>No medical evidence was introduced to contradict these findings</u>. Absent some explanation from the ALJ to the contrary, Audler would appear to have met her burden of demonstrating that she meets the Listing requirements for § 1.04A, and therefore her substantial rights were affected by the ALJ's failure to set out the bases for her decision at step three.

Id. (footnote omitted) (emphasis added).

In the instant case, by contrast, the ALJ's failure to discuss Listing 12.05 is harmless error because substantial medical evidence contradicts Jackson's contention that he meets Listing 12.05(B) or (C). Listing 12.05 defines mental retardation as "a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

The subparagraphs of the Listing define the level of severity necessary to qualify as a disability. Listing 12.05(B) requires only a "<u>valid</u> verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B (emphasis added). Listing 12.05(C) requires a "<u>valid</u> verbal, performance, or full scale IQ of 60 to 69

inclusive <u>and</u> a physical or other mental impairment imposing additional and significant work-related limitation of function."  <u>Id.</u> § 12.05(C) (emphasis added)

Jackson's IQ was first tested in the summer of 2001 at age 16 as part of a comprehensive public school evaluation of his special education needs.  (Tr. 103-04).  He was tested again by a consultative examiner for the Social Security Administration, psychologist Brian G. Murphy, Ph.D., on May 16, 2005.

Jackson's 2001 test results are not reported as numeric scaled IQ scores, but as various "functioning ranges" that ranged from low average to borderline to extremely low.  Plaintiff argues that his results of a "borderline" verbal score and "extremely low" performance and full scale scores satisfy the requirements that one of these scores be 59 or less for Listing 12.05(B), or be 60 to 69 for Listing 12.05(C).  The school psychologist noted that plaintiff's "extremely low" performance and full scale scores placed him in the "first percentile and classified his level of functioning within the intellectually deficient range." (Tr. 104).  As a result of the overall special education needs assessment, Jackson was classified as having a "mental disability, mildly impaired."  (Tr. 94, 109).

When Dr. Murphy tested Jackson almost four years later, plaintiff achieved "IQ scores that are essentially at the mild mental retardation level, i.e., Verbal IQ = 62, Performance IQ =57 and Full Scale IQ =56." (Tr. 146).  Dr. Murphy also reviewed a partial copy of the school assessment, which included the 2001 IQ test results.  Dr.

Murphy noted that plaintiff's IQ scores in 2001 were "at the borderline level for the verbal score and I would guess that his performance and full-scale scores were at the mild mental retardation level." (Tr. 146). He observed that Jackson's IQ scores in 2005 "are apparently somewhat lower than they were when he was tested by school authorities. For example, we are now seeing a verbal IQ score of 62 when previously his verbal IQ score was in the borderline range." (Tr. 147).

Plaintiff argues that his performance and full scale IQ scores on the two tests meet the requirements of Listing 12.05(B). He argues alternatively that his verbal IQ score satisfies the first prong of Listing 12.05(C) and that his other mental impairments satisfy the second prong.

Both subparagraphs of Listing 12.05 require a <u>valid</u> IQ score. Dr. Murphy's report is replete with his impressions that Jackson, at best, was not using his best efforts during the psychological testing and, at worst, was malingering and fabricating his responses for secondary gain. (Tr. 146-51 <u>passim</u>).

Plaintiff contends that Dr. Murphy's observations are undermined because he did not administer a formal malingering test. However, Dr. Murphy based his impressions on numerous specific examples of Jackson's behavior and responses during interviewing and testing, and on Dr. Murphy's own experience of "working with thousands of patients over the years." (Tr. 147). The ALJ accurately summarized Dr. Murphy's misgivings

and conclusions when the ALJ determined plaintiff's residual functional capacity. (Tr. 35).  Ultimately, Dr. Murphy stated that Jackson was "best diagnosed as a slow learner" (Tr. 148),  rather than as mentally retarded, indicating that Dr. Murphy did not place any faith in plaintiff's "IQ scores that are essentially at the mild mental retardation level."  (Tr. 146).

Thus, the ALJ's conclusion that plaintiff does not meet any Listing is supported by substantial evidence that the record does not contain <u>valid</u> IQ scores that would satisfy either Listing 12.05(B) or the first prong of Listing 12.05(C).

### 2. <u>The ALJ's findings concerning plaintiff's residual functional capacity are supported by substantial evidence.</u>

Jackson argues that the ALJ's conclusions concerning his residual functional capacity are not supported by substantial evidence because (1) the definition of "moderate" limitation that the ALJ gave the vocational expert at the hearing differed from the definition on the Mental Medical Source Statement that was completed by a non-examining consultant, Horace W. Bedwell, Ph.D., whose opinion the ALJ cited in his decision, and (2) the ALJ failed to take into account all of the limitations imposed by Dr. Murphy.  Both of these contentions lack merit.

As to the first contention, the ALJ defined "moderate" as "limited but still able to function satisfactorily" during the hearing (Tr. 218), while the Mental Medical Source Statement form used by Dr. Bedwell has a preprinted definition of a "moderate

limitation" as one that "[a]ffects but does not preclude ability to perform basic work functions." (Tr. 189). Even assuming that these definitions differ in any important way (and plaintiff does not explain in his memorandum how they differ or why the difference is significant), the conclusions of Dr. Bedwell; another non-examining consultant, Joseph K. Kahler, Ph.D.; Dr. Murphy; and the vocational expert were the same: Jackson's mild to moderate functional limitations do not preclude him from working.

Dr. Kahler opined on May 23, 2005 that Jackson's intellectual capacity is difficult to assess "due to poor motivation and malingering" but that he "appears to be capable of simple work in a relatively low stress environment with low social demands." (Tr. 156). Dr. Bedwell stated on March 6, 2006 that the evidence "represents malingering behavior" and that "I feel [Jackson] could do simple repetitive work <u>if he wants to do it</u>. I do not feel he will keep sustained gainful employment but it is not because of [psychiatric] problems." (Tr. 192) (emphasis in original).

The findings of the non-examining consultants were consistent with Dr. Murphy's opinion, after he had interviewed and tested plaintiff on May 16, 2005, that Jackson had possible "fabricated" symptoms; that all indications "suggest to this examiner that the patient is likely of a borderline competency," rather than mentally retarded; and that Jackson's Global Assessment of Functioning Scale ("GAF")[3] score was 70. (Tr. 150-51).

---

[3]The GAF "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1122 n.3 (10th Cir.

A GAF score of 70 indicates only "mild symptoms or 'some difficulty' in [social, occupational, or school functioning], but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 30, 32 (4th ed. 1994)).

Additionally, plaintiff argues that, in determining his residual functional capacity, the ALJ failed to take into account Dr. Murphy's statements that Jackson lacks fortitude, resolve and motivation; would not be conscientious in the workplace; would have difficulty responding to supervision and interacting with coworkers; would not have the ability to deal with stress or pressures; and would not be able to handle his own financial affairs. However, Dr. Murphy's statements, when read in their entire context, are consistent with Dr. Bedwell's and Dr. Kahler's opinions, with the remainder of Dr. Murphy's own opinion and with the ALJ's findings that plaintiff has mild to moderate limitations in his abilities to perform basic work functions.

Dr. Murphy's full statement was as follows:

> I believe that <u>this patient has the ability to remember and to carry out instructions as well as would a slow learner</u>. I do believe, however, that he lacks fortitude and resolve and motivation and probably wouldn't be very conscientious at the workplace. He also would have difficulty in responding to supervision and in interacting with coworkers. He certainly

---

2004) (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000)).

> would really not sustain effort and persist at a normal pace over the course of a 40-hour workweek, <u>not because he couldn't but because he doesn't want to</u>, in my opinion. He also would not deal well with stress or pressure because this is a person who is again very shallow and without much substance.

(Tr. 150) (emphasis added).

Accordingly, substantial evidence supports the ALJ's conclusion that plaintiff has the residual functional capacity to perform work that exists in significant numbers in the national economy.

## CONCLUSION

The ALJ did not err by failing to find that plaintiff's impairments meet Listing 12.04(B) or 12.05(C). Substantial evidence of record supports the ALJ's finding that Jackson had the residual functional capacity to perform work available in the national economy.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this <u>  27th  </u> day of December, 2007.

<u>                                                     </u>
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE